

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

DANNY L. JOHNSON,                              )
                                               )
    **Plaintiff,**            )
                                               )
  v.                                  ) **No. 11 C 154**
                                               )
THOMAS ROOT, Adult Probation Officer,  ) **Judge Ruben Castillo**
 in his individual and official capacity, and  )
COUNTY OF COOK,                         )
                                               )
    **Defendants.**           )

### MEMORANDUM OPINION AND ORDER

Danny L. Johnson brings this action against a former officer of the Cook County Adult Probation Office, Thomas Root, alleging violations of state and federal law. (R. 1, Compl.) Presently before the Court is Root's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). (R. 15, Root's Mot.) For the reasons stated below, Root's motion is granted in part and denied in part.

### RELEVANT FACTS

On July 3, 1995, Johnson entered guilty pleas in the Circuit Court of Cook County, Criminal Division, to various criminal charges. (R. 1, Compl. ¶ 1.) He was sentenced to concurrent terms of 18 months probation, with six months to be served in jail. (*Id.*) In November 1995, at the conclusion of his jail term, an extradition officer took Johnson to Tennessee, where he was ordered to serve a term of three years in a Tennessee prison. (*Id.* ¶ 14.) Johnson ultimately served 21 months of this sentence. (*Id.*) From July 3, 1995, through at least February 16, 1996, Johnson was incarcerated without interruption. (*Id.* ¶ 15.)

On January 24, 1996, while Johnson was incarcerated in Tennessee, Cook County Adult Probation Officer Michael Bruns mailed a notice to Johnson's home address. (*Id.* ¶ 6.) This notice stated that Johnson was required to appear at a hearing on February 16, 1996, to answer allegations in the attached "petition for violation of probation and warrant." (*Id.*) This petition, which was prepared by Bruns, alleged that Johnson had violated the conditions of his probation by failing to report to probation on July 3, 1995, the day he was sentenced. (*Id.* ¶ 7.) The petition requested the court to issue a warrant for Johnson to appear and answer the allegations at a hearing to determine whether his probation should be revoked or modified. (*Id.*)

A few weeks later, on February 16, 1996, Root, another Cook County Adult Probation Officer, filed and presented the "petition for violation of probation and warrant." (*Id.* ¶ 8.) When Johnson did not appear, the court issued a "no-bail" warrant for his arrest, which remained outstanding for more than 10 years. (*Id.*)

In October of 2006, Johnson was arrested and charged with criminal trespass to property. (*Id.* ¶ 9.) At that time, the warrant issued on February 16, 1996, was executed, and Johnson appeared before the circuit court on the State's request to revoke the probation imposed on July 3, 1995. (*Id.*) At the subsequent revocation hearing, the circuit court took judicial notice of the pretrial investigation report, which was supported by documents from the Tennessee court system. (*Id.* ¶ 16.) These documents indicated that Johnson had been charged, convicted, and sentenced for several offenses in Tennessee from 1998 through 2006. (*Id.*) They also reflected that on April 3, 1996, Johnson was sentenced in Tennessee to a prison term of three years and received 130 days' credit against that term for time already served. (*Id.*)

The circuit court also heard testimony from Root and Johnson. Root testified that according to the records maintained by the probation department, Johnson had failed to report since the imposition of his probation term in July 1995. (*Id.* ¶ 10.) He stated that the notice of revocation petition and the February 1996 hearing date were mailed to Johnson at the most recent address on file with the department, and when Johnson did not appear in court on February 16, 1996, a warrant was issued for his arrest. (*Id.* ¶¶ 11-12.) Root also testified that Johnson's assigned probation officer, Bruns, was no longer employed by the probation department. (*Id.* ¶ 10.) He stated that, as far he knew, Johnson never met with Bruns. (*Id.* ¶¶ 10-11.) Root acknowledged that he was unaware that a six-month jail term had been imposed as part of Johnson's probation, and could not recall if he had checked to determine whether Johnson was in custody as of February 1996. (*Id.* ¶ 13.) He also admitted that it was not possible for Johnson to report to the department while serving a jail term. (*Id.*)

Johnson testified that from July 3, 1995, through at least February 16, 1996, he was incarcerated in Tennessee without interruption and was unable to contact the probation department. (*Id.* ¶ 15.) Johnson also stated that after being released from prison, he worked in Tennessee and did not report to the Cook County Adult Probation Department because he "didn't know he was still on probation." (*Id.*)

At the conclusion of the revocation hearing, the circuit court found that although Johnson was unable to report to the probation department while he was incarcerated in Tennessee, his failure to report after he was released from prison in Tennessee in August 1997 constituted a violation of his probation. (*Id.* ¶ 17.) The court revoked Johnson's probation and sentenced him to consecutive terms of one, three, and five years, totaling nine years' imprisonment. (*Id.* ¶ 18.)

Johnson timely filed notices of appeal, and on September 22, 2009, the Second Division of the First Judicial District of the Appellate Court of Illinois ("Appellate Court") reversed the circuit court's judgment revoking Johnson's probation and vacated his sentence. (*Id.* ¶¶ 19-20.) The basis for the reversal by the Appellate Court was that Root, as a probation officer, did not have the authority under the relevant Illinois statute to initiate the proceeding to revoke Johnson's probation. (*Id.* ¶ 21.) Accordingly, the Appellate Court held that the petition seeking revocation of Johnson's probation was invalid *ab initio* and could not serve as the basis for issuance of a warrant for Johnson's arrest. (*Id.* ¶ 22.) The Appellate Court further held that in the absence of a valid pleading, Johnson's probation was not tolled and his 18 month probation expired on January 2, 1997, leaving the circuit court without jurisdiction to rule on the revocation petition in March 2007. (*Id.* ¶ 23.) Johnson was released from custody in April 2010. (*Id.*)

## PROCEDURAL HISTORY

Johnson brought suit in this case on February 25, 2011, alleging claims under state and federal law. (*Id.*) Under 42 U.S.C. §1983 ("Section 1983"), Johnson alleges claims for wrongful conviction (Count I); false imprisonment (Count II); substantive due process/egregious abuse of power (Count III); equal protection (Count IV); and a *Monell* claim against Cook County (Count V). (*Id.* ¶¶ 24-41.) Under state law, Johnson avers claims for indemnification against Cook County (Count VI); false imprisonment (Count VII); malicious prosecution (Count VIII); and intentional infliction of emotional distress (Count IX). (*Id.* ¶¶ 42-54.)

On February 25, 2011, Root filed a motion to dismiss. (R. 15, Root's Mot.) In his motion, Root contends that Johnson's claims against Root should be dismissed pursuant to Rule 12(b)(6) because he is entitled to quasi-judicial immunity, public official immunity, and/or

sovereign immunity. (*Id.* at 2.) Root also maintains that he is entitled to immunity under the Eleventh Amendment for all official capacity claims, and therefore that Johnson's complaint should be dismissed under Rule 12(b)(1). (*Id.*) Finally, Root argues that Cook County should be dismissed from the lawsuit because there is no employment relationship between Cook County and Root or the Cook County Adult Probation Department. (*Id.*)

In opposing Root's motion, Johnson argues that Root is not entitled to absolute, public official, or sovereign immunity. (R. 23, Johnson's Resp.) Johnson concedes, however, that he has no cause of action against Root in his official capacity or against Cook County because Root is a state employee. (*Id.* at 1.) Given these concessions, the remaining issue before the Court is whether Johnson's claims against Root in his individual capacity should be dismissed because Root is entitled to absolute immunity for Johnson's federal claims and/or public official or sovereign immunity for Johnson's state law claims.

## LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). In ruling on a motion to dismiss, the Court construes the complaint "in the light most favorable to the nonmoving party, accept[ing] well-pleaded facts as true, and draw[ing] all inferences in her favor." *Reger Dev. LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). To survive a motion to dismiss for failure to state a claim, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must plausibly suggest that the plaintiff has a right to

relief, raising that possibility above a 'speculative level[.]'" *Tamayo v. Blagojevich*, 526 F.3d

1074, 1084 (7th Cir. 2008). Under Rule 12(b)(6), a claim may be dismissed if, as a matter of

law, "it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) (quoting *Hishon*

*v. King & Spaulding*, 467 U.S. 69, 73 (1984)).

## ANALYSIS

In support of his motion to dismiss, Root contends that the doctrines of absolute

immunity, public official immunity, and sovereign immunity bar Johnson's claims. The Court

will consider each in turn.

**I.      Absolute Immunity under Section 1983**

In subjecting to liability "[e]very person" who, acting under color of state law, deprives

any citizen "of any rights, privileges, or immunities secured by the Constitution and laws,"

Section 1983 on its face does not provide for any defense of official immunity. 42 U.S.C. §

1983. In *Tenney v. Brandhove*, however, the Supreme Court held that Congress did not intend to

abrogate immunities "well grounded in history or reason" in enacting Section 1983. 341 U.S.

367, 376 (1951). Since *Tenney*, the Supreme Court has recognized two types of immunities

under Section 1983: qualified immunity and absolute immunity. *Buckley v. Fitzsimmons*, 509

U.S. 259, 268 (1993). Root seeks to dismiss Johnson's federal claims on the ground that he is

entitled to absolute immunity for the conduct Johnson alleges.[1]

"[A]bsolute immunity from civil liability for damages is of a 'rare and exceptional

character.'" *Auriemma v. Montgomery*, 860 F.2d 273, 275 (7th Cir. 1988) (quoting *Cleavinger v.*

---

[1] Root does not seek qualified immunity at this time.

*Saxner*, 474 U.S. 193, 202 (1985)). Because it is a complete defense to liability for money damages, "[a]bsolute immunity is only accorded for limited functions; 'the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.'" *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996). Accordingly, officials claiming the "strong medicine" of absolute immunity bear the burden of showing that public policy justifies immunity for the function in question. *Forrester v. White*, 792 F.2d 647, 660 (7th Cir. 1986) (Posner, J. dissenting).

The test to determine whether an official is entitled to absolute immunity is well-established: a court must apply a "functional approach" by "look[ing] to the nature of the function performed, not the identity of the actor who performed it." *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (quoting *Wilson*, 86 F.3d at 1443). Absolute immunity is not limited to prosecutors or judges, but rather "protects members of quasi-adjudicatory bodies when their duties are functionally equivalent," *id.*, "and require a full exemption from liability," *Butz v. Economous*, 438 U.S. 478, 508 (1978).

Under this functional test, the Seventh Circuit has recognized that certain actions of probation officers deserve absolute immunity, including conduct that is analogous to acts undertaken by judges, *Walrath v. United States*, 35 F.3d 277, 282 (7th Cir. 1994), integrally related to the judicial process, *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir. 1986), or prosecutorial in nature, *Walrath*, 35 F.3d at 283. In this case, Root relies on each of these theories of "quasi-judicial" immunity to support his claim that he is entitled to absolute immunity for the conduct at issue here—the presentation and filing of the probation violation petition. (R. 15, Root's Mot. at 8.) The Court finds, however, that Root has not met his burden

7

in establishing that his conduct challenged here was judicial in nature, integral to the judicial

process, or functionally comparable to prosecutorial action entitled to absolute immunity.

First, Root has not shown the act of presenting and filing the probation violation petition

was analogous to judicial action. The Seventh Circuit has recognized that parole officer

activities entitled to absolute immunity are those that "involve decision-making that is 'judicial'

in nature," such as "acts associated with the decision to grant, revoke, or deny parole, or the

signing of an arrest warrant." *Dawson v. Newman*, 419 F.3d 656, 662 (7th Cir. 2005) (citations

omitted). In holding that a member of the parole commission was entitled to absolute immunity

for his signing of an arrest warrant, the Seventh Circuit noted that "the issuance of an arrest

warrant has several key characteristics in common with a judicial act: it involves the exercise of

discretion in applying the law to the facts of a particular case, poses a heightened risk of

vexatious litigation, and is 'open to correction through ordinary mechanisms of review.'"

*Walrath*, 35 F.3d at 282 (citation omitted).

Here, Root points to no decision made or exercise of discretion that was judicial in

nature. Based on the facts alleged, Root himself did not issue the arrest warrant or decide to

revoke Johnson's probation; rather, he filed the probation violation petition, which "requested

the court to issue a warrant for Johnson to appear and answer the allegations at a hearing to

determine whether his probation should be revoked or modified." (R. 1, Compl. ¶ 7.) Root is

therefore not entitled to absolute immunity on this ground. *See Scotto v. Almenas*, 143 F.3d 105,

111 (2d Cir. 1998) (noting that because the parole officer merely recommended that a warrant be

issued, rather than "make an adjudicative decision to revoke" the plaintiff's parole, the act was

not functionally comparable to that of a judge); *Russ v. Uppah*, 972 F.2d 300, 303 (10th Cir.

1992) (granting absolute immunity to parole board members for quasi-judicial act of revoking parole, but denying immunity to parole officer who recommended revocation).

Nor has Root shown that his conduct had an "integral relationship with the judicial process." 808 F.2d at 1238. Whether conduct qualifies under this theory depends on its proximity to the judicial process: "[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach." *Snell v. Tunnell*, 920 F.2d 673, 687 (10th Cir. 1990). Under this rationale, several circuits have held that probation officers are entitled to absolute immunity for their preparation of presentence reports ("PSRs") because in preparing the reports, they act at the direction of the court and are therefore serving "as an arm of the court." *See Scotto*, 143 F.3d at 111 (citing *Dorman v. Higgins*, 821 F.2d 133, 137 (2d Cir. 1987)); *Tripati v. INS*, 784 F.2d 345, 348 (10th Cir. 1986); *Spaulding v. Nielsen*, 599 F.2d 728, 729 (5th Cir. 1979)); *see also Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) ("Guardians ad litem and court-appointed experts . . . are absolutely immune from liability from damages when they act at the court's direction."). When probation officers prepare probation reports or revocation reports, however, they are not entitled to absolute immunity because they act at their own initiative, rather than the direction of the court, and are therefore "not acting as closely with the court as in the presentence report process." *Ray v. Pickett*, 734 F.2d 370, 372-73 (8th Cir. 1984).

In this case, although Root argues that he "was acting as an arm of the judge who sentenced" Johnson, (R. 15, Root's Mot. at 7), he has failed to provide any support for that contention. Root does not contend that he was directed by the court to file and present the probation violation petition. Instead, the allegations in the complaint lead to the inference that Root acted at his own initiative prior to the commencement of the parole revocation proceedings.

9

Thus, Root's argument that his conduct is entitled to absolute immunity because it was "intimately related to the judicial process" fails at this time. *See Scotto*, 143 F.3d at 112 (holding that the parole officer was not entitled to absolute immunity for his "actions in preparing [the plaintiff's] parole violation report and in recommending an arrest warrant issue" because they "were not performed under judicial direction and occurred before the initiation of parole revocation proceedings"); *Snell*, 920 F.2d at 692 n.18 ("In contrast to the preparation of [PSRs], other decisions . . . by a parole officer warrant only qualified . . . immunity because such decisions are further removed from the judicial process and are not initiated by courts.").

Finally, Root has not demonstrated that the conduct at issue here was analogous to prosecutorial actions entitled to absolute immunity. Prosecutors are entitled to absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial, because it is conduct that is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Under this theory, other officials performing functions that are prosecutorial in nature are entitled to absolute immunity for conduct such as the decision to initiate or move forward with an adjudicative proceeding. *See Butz*, 438 U.S. at 515 ("[a]n agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought" and "should be able to claim absolute immunity with respect to such acts"). Prosecutors and other officials are denied absolute immunity, however, when they act in an investigative or administrative capacity. *See Hartman v. Moore*, 547 U.S. 250, 262 n.8 (2006) (no absolute immunity for a prosecutor for conduct taken in an investigatory capacity); *Buckley*, 509 U.S. at 271-76 (no absolute immunity when a prosecutor acts in an administrative capacity); *Burns v.*

10

*Reed*, 500 U.S. 478, 492-96 (1991) (no absolute immunity when a prosecutor offers legal advice to the police regarding interrogation practices).

Under this reasoning, parole and probation officers are entitled to absolute immunity for conduct involved in initiating revocation proceedings that is analogous to the conduct for which prosecutors receive absolute immunity, such as determining proper legal charges to file based on evidence gathered by others. *See Walrath*, 35 F.3d at 283 (official with the parole commission was entitled to absolute immunity for the conduct involved in determining the proper legal charges to be brought against the plaintiff because the conduct was closely analogous to "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings . . . which must include the professional evaluation of the evidence gathered by others") (internal quotation marks and citations omitted). When such conduct involves investigative or administrative functions, and is therefore akin to duties performed by police officers, probation officers are entitled only to qualified, not absolute, immunity. *See Wilson*, 86 F.3d at 1446 (finding that corrections official who investigated charges and then filed the notice of charges and violation report performed a function analogous to an employee who seeks an arrest warrant and was therefore not entitled to absolute immunity); *see also Dawson*, 419 F.3d at 662 (finding that parole officials "offer[ed] no precedent for the proposition that they should be entitled to absolute immunity for performing their day-to-day duties in supervision of a parolee"). The Seventh Circuit has identified duties analogous to those performed by police officers to include investigating potential charges, issuing notices of charges, and as relevant here, initiating revocation proceedings. *Wilson*, 86 F.3d at 1445-46.

11

In this case, the record is insufficiently developed for the Court to find that Root's conduct was analogous to prosecutorial conduct entitled to absolute immunity. At this stage, the Court cannot determine if Root's conduct as alleged—filing and presenting the "petition for violation of probation and warrant"—is analogous to prosecutorial conduct or the investigative and administrative duties the Seventh Circuit has concluded are similar to functions performed by police officers. *See id.*, 86 F.3d at 1446 ("Kelkhoff, by investigating the charge and then filing the notice of charges and violation report, performed a function analogous to an employee who seeks an arrest warrant."). It may be that with further development of a proper record, Root may establish that he is entitled to absolute immunity. It is more likely that the more expansive doctrine of qualified immunity may protect Root's conduct involved in filing and presenting the probation violation petition.

At this point in the proceedings, as Root points out, Johnson's complaint does not specifically allege that Root investigated the circumstances of Johnson's alleged probation violation. Indeed, the complaint contains few details regarding Root's conduct other than the allegation that he filed and presented the probation violation petition. This omission is not fatal, however, because absolute immunity is an affirmative defense, *Tully v. Barada*, 599 F.3d 591, 594 (7th Cir. 2010), and Johnson need not anticipate and plead around an affirmative defense. *United States Gypsum Co. v. Ind. Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003). A plaintiff may plead himself out of court by alleging the ingredients of a defense, *id.*, but Johnson has not done so in this case. Thus, because it is not clear at this stage whether Root's conduct at issue is sufficiently analogous to prosecutorial conduct for which he would be entitled to absolute immunity, the Court declines to dismiss Johnson's claims on this ground at this time. *See*

12

*Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) ("Because an immunity defense usually depends on the facts of the case, dismissal at the pleading state is inappropriate . . . Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal.") (internal quotation marks and citations omitted).

## II.     Public Official Immunity

Root next argues that Johnson's pendant state law claims must be dismissed because he is entitled to public official immunity. (R. 15, Root's Mot. at 9-10.) "[P]ublic official immunity is a common law defense to liability for employees of the State of Illinois where those employees engage in discretionary functions." *Mich. Ave. Nat'l Bank v. Cnty. of Cook*, 732 N.E.2d 528, 544 (Ill. 2000). The doctrine serves to "protect state officials from being inhibited from acting in the public's best interest because of fears of personal liability." *Id.* at 543 (citation omitted). Public official immunity attaches only to conduct that is discretionary, rather than ministerial, in nature. *Currie v. Lao*, 592 N.E.2d 977, 984 (Ill. 1992) (citation omitted). Additionally, it is well established that public official immunity does not apply to every discretionary act by an official, but rather only to those acts that are within the scope of an official's authority. *See* Restatement (Second) of Torts § 895D (1979) ("A public officer acting within the general scope of his authority is not subject to tort liability for an administrative act or omission if (a) he is immune because he engaged in the exercise of a discretionary function, (b) he is privileged and does not exceed or abuse the privilege, or (c) his conduct was not tortious because he was not negligent in the performance of his responsibility.")

Here, Root contends that he is entitled to public official immunity because he "is being sued for actions that he allegedly conducted during the performance of his discretionary duties

with the Cook County Adult Probation Department." (R. 15, Root's Mot. at 10.) This argument fails to persuade the Court because it does not accord with the allegations in this case. While it is true that Root would be entitled to public official immunity for actions conducted in the performance of a discretionary duty, here the complaint clearly alleges that Root was acting outside the scope of his authority and in violation of Illinois law when he filed and presented the probation violation petition. (R. 1, Compl. ¶¶ 21-23.) Additionally, the Appellate Court's unpublished opinion in the underlying state court proceeding explicitly held that Root did not have the authority under the relevant Illinois statute to initiate the proceeding to revoke Johnson's probation. *People v. Johnson*, Nos. 1-07-1675, 1-07-1847 (1st Dist. filed Sept. 22, 2009). Following two other Illinois appellate courts, the Appellate Court in this case held that a probation officer lacks authority to file a pleading that seeks revocation of a defendant's probation because such action "usurps the State's attorney's prerogative" and "constitutes the unauthorized practice of law." *Id.* at 6 (citing *People v. Herrin*, 895 N.E.2d 1075 (3d Dist. 2008); *People v. Kellems*, 872 N.E.2d 390 (4th Dist. 2007)).

Aside from his conclusory argument that he is entitled to public official immunity because he was "performing the discretionary and unique governmental duties of a probation officer," (R. 15, Root's Mot. at 11), Root does not challenge the Appellate Court's holding that he usurped his authority in filing the probation violation petition in his opening brief. He does not cite any authority in support of his claim that he was acting within the scope of his authority, nor question the Appellate Court's reasoning or conclusion. Instead, it is not until his reply brief that he points to *People v. Keller*, 926 N.E.2d 890 (1st Dist. 2010). (R. 25, Root's Reply at 3.) In *Keller*, the Third Division of the First District disagreed with the reasoning in *Kellems* and

14

*Herrin* and held that it is within a probation officer's statutory authority to file a petition for

violation of probation. *Keller*, 926 N.E.2d at 897. This decision clearly supports the argument

that the Appellate Court erred as a matter of law in the underlying proceedings in concluding

Root acted outside of his authority, but Root fails to clearly make or support this argument in his

opening brief. A party cannot make conclusory and underdeveloped arguments in its opening

brief and then deign to support and develop those arguments in his or her reply brief. *See Judge*

*v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("[P]erfunctory and undeveloped arguments, and

arguments that are unsupported by pertinent authority, are waived.") (citation omitted); *United*

*States v. Adamson*, 441 F.3d 513, 521 n.2 (7th Cir. 2006) (arguments raised for the first time in a

reply brief are waived). In failing to put the clear holding of the Appellate Court's decision—and

the fundamental issue in this case—into doubt until his reply brief, Root denied Johnson the

opportunity to respond. The Court will not determine whether Root acted within his authority

when he filed the probation violation petition as a matter of law until both parties have had the

opportunity to properly brief the issue. Accordingly, the Court concludes that Root is not entitled

to public official immunity at this time.

## III.    Sovereign Immunity

Root also argues that he is protected from liability under the doctrine of sovereign

immunity. State law rules of sovereign immunity govern state law causes of action in federal

court. *Magdziak v. Byrd*, 96 F.3d 1045, 1048 (7th Cir. 1996) (citation omitted). Except as

provided in the Illinois Court of Claims Act, 705 Ill. Comp. Stat. 505/8, the State of Illinois is

immune from suit in any court. *Richman v. Sheahan*, 270 F.3d 430, 441 (7th Cir. 2001). This

"prohibition against making the State of Illinois a party to a suit cannot be evaded by making an

action nominally one against the servants or agents of the State when the real claim is against the State of Illinois itself and when the State of Illinois is the party vitally interested." *Healy v. Vaupel*, 549 N.E.2d 1240, 1247 (Ill. 1990) (internal quotation marks and citations omitted). Thus, when an employee of the State of Illinois is sued, state law claims are barred if the claims are actually against the state. *Richman*, 270 F.3d at 441. A claim is against the state when: (1) there are "no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts"; (2) "the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment"; and (3) "the complained-of actions involve matters ordinarily within that employee's normal and official function of the State[.]" *Healy*, 549 N.E.2d at 1247. Sovereign immunity, however, "affords no protection . . . when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority." *Richman*, 270 F.3d at 441 (quoting *Nichol v. Stass*, 735 N.E.2d 582, 586 (Ill. 2000)).

As with public official immunity, in claiming sovereign immunity Root once again makes the conclusory and unsupported argument that he "was performing his unique government function as a probation officer" when he filed the probation violation petition. (R. 15, Root's Mot. at 12.) For the reasons discussed above, this argument fails at this time. Without further briefing on the issue, the Court will not rule—contrary to the Appellate Court's clear holding—that Root acted within his authority in filing the probation violation petition.

## CONCLUSION

For the reasons stated above, Root's motion to dismiss (R. 15) is granted in part and denied in part. The motion is GRANTED as it pertains to the claims in Counts V and VI against

16

Cook County and all claims against Root in his official capacity. The motion is DENIED as to

the remaining claims against Root in his individual capacity. The parties are directed to

reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this

case. The parties shall appear for a status on September 14, 2011, at 9:45 a.m. to set a firm

litigation schedule.

Entered:

Judge Ruben Castillo
United States District Court

**Dated:** September 1, 2011